## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

DONALD WRIGHT                                           CIVIL ACTION

VERSUS

HONEYWELL INTERNATIONAL INC.              NO. 22-00928-BAJ-SDJ

### RULING AND ORDER

This is a wrongful termination case in which Plaintiff alleges that he was unlawfully discriminated against and terminated due to his religious beliefs. (Doc. 1). Now before the Court is Defendant's **Motion For Summary Judgment (Doc. 35)**, seeking dismissal of Plaintiff's claims. Plaintiff opposes Defendant's Motion. (Doc. 41). For the reasons stated herein, Defendant's Motion will be **GRANTED**.

I.     BACKGROUND

A. Summary Judgment Evidence

The facts set forth below are drawn from Defendant's Statement Of Undisputed Material Facts (Doc. 35-1, "Defendant SOF").[1]

---

[1]     As required by Local Civil Rule 56, Defendant accompanied its motion with a numbered Statement of Undisputed Material Facts, specifically citing record evidence or facts otherwise susceptible to judicial notice. (Doc. 35-1). In response, Plaintiff was required to submit "a separate, short, and concise statement of material facts" expressly admitting, denying, or qualifying Defendant's numbered facts, and supporting "each denial or qualification by a record citation." M.D. La. LR 56(c). Instead, Plaintiff submitted a competing Statement of Undisputed Material Facts that fails to specifically respond to any of the paragraphs set forth in the Defendant's SOF. (*See* Doc. 41-1).

The Local Rules are clear: at summary judgment well-supported "[f]acts contained in a supporting or opposing statement of material facts ... shall be deemed admitted unless properly controverted." M.D. LR 56(f). The Court is under "no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statement of facts." *Id*. Moreover, the Court has repeatedly warned that "its Local Rules carry the force

From 2008 to May 13, 2022, Plaintiff was employed by Defendant at the Honeywell Specialty Materials facility in Baton Rouge, Louisiana. (Doc. 35-1 at ¶ 1). Honeywell Specialty Materials is a chemical processing plant that operates continuously year-round. (*Id.* at ¶¶ 1-2). Plaintiff was most recently employed by Defendant as a Dock B Operator, and was the only such employee at Honeywell Specialty Materials. (*Id.* at ¶¶ 3, 65). Plaintiff's Human Resources Manager was Gregory Panger. (*Id.* at ¶ 5).

In 2015, Plaintiff received a tetanus vaccine. (*Id.* at ¶ 7). Plaintiff "didn[']t like the respon[s]e his body had from i[t]." (*Id.* at ¶ 28). Several years later, Plaintiff had bypass heart surgery to fix a blockage in his arteries. (*Id.* at ¶ 8). Plaintiff has identified nine medications that he presently takes daily, and nine other medications that he has taken in the past. (*Id.* at ¶ 9).

In March 2020, the COVID-19 ("COVID") pandemic threatened the health and safety of individuals across the world. (*Id.* at ¶ 10). To help combat this threat, President Joseph R. Biden, Jr. issued Executive Order 14042, which mandated that federal contractors, such as Defendant, require all employees who work on or with a federal contract to become fully vaccinated against COVID. (*Id.* at ¶¶ 11-12). Executive Order 14042 allowed for employees to apply for medical or religious

---

of law, that parties appearing before the Court are charged with knowledge of its Local Rules, and that a party that fails to comply with the Local Rules does so at [his] own peril." *Deggs v. Aptim Maint.*, LLC, No. 19-cv-00406, 2022 WL 2351922, at *1 n.2 (M.D. La. June 29, 2022) (Jackson, J.) (quotation marks omitted). "At grave risk, Plaintiff ignored these admonishments." *Singleton v. Louisiana*, No. CV 20-00625-BAJ-RLB, 2023 WL 4750115, at *1 n.1 (M.D. La. July 25, 2023). Absent any proper opposition, the Court deems admitted the well-supported facts set forth in Defendant's SOF. *See id.*

exemptions from this vaccine mandate. (*Id.*). To comply with this executive order, Defendant adopted a mandatory COVID vaccination policy in late 2021. (*Id.* at ¶ 13). Plaintiff received a copy of this policy, whereby he was informed that, absent the grant of a medical or religious exemption, he was required to get fully vaccinated for COVID by April 15, 2022. (Id. at ¶¶ 17-18).

Plaintiff applied for a religious exemption to Defendant's vaccination policy. (*Id.* at ¶¶ 20-21). In his exemption request, Plaintiff indicated that he had never sought a religious exemption for a mandatory vaccine in the past. (*Id.* at ¶ 23). When prompted to describe why his religious beliefs prevented him from getting a COVID vaccine, Plaintiff stated:

> I am a Baptist, but my beliefs go[] way beyond that [I] bel[ie]ve our creator gave us this gift to choose and decide for ourselves it is also in our constitution no man should be forced to do something he [or] she is not comfortable with and in my opinion this is a decision [that] shouldn[']t require people having to choose between one [or] another.

(*Id.* at ¶ 24). The "gift" that Plaintiff refers to here is his body or "temple" and Plaintiff believes that "[t]he freedom to choose what I put in my own temple" is part of this gift. (*Id.* at ¶ 25). Asked directly what religious tenet prevented him from getting a COVID vaccine, Plaintiff stated "I won[']t say i[t] prevents me but cert[ai]n passages le[ad] me to feel very strongly about my dec[i]sion. (*Id.* at ¶ 26).

Plaintiff was then questioned as to when his religious beliefs developed, or whether they had changed over the course of his life. Plaintiff responded with "N/A." (*Id.* at ¶ 27). Similarly, when asked to provide an explanation as to the difference between the tetanus vaccine he had received in 2015 and the COVID vaccine, Plaintiff

responded with "N/A." (*Id.* at ¶ 29).

Plaintiff thereafter stated that he did not require additional accommodations to enable him to perform his job, as he "mainly work[ed] alone" and "there [were] o[nly] two [people] [he] c[a]me in contact with and [he] tr[ied] to keep [his] distance and wear a mask." (*Id.* at ¶ 30). Defendant challenges this account, and notes that Plaintiff worked in an open-air facility employing roughly one hundred and fifty people, with whom Plaintiff interacted when entering and exiting the facility or when accessing any communal workspaces. (*Id.* at ¶¶ 32-35).

After Plaintiff submitted his original exemption request, he supplemented said request with a third-party attestation letter, as required by Defendant's instructions. (*Id.* at ¶ 36). Plaintiff submitted a supplemental request containing this third-party attestation letter. Therein, Plaintiff's daughter provides:

> It is in our belief that humans should only use things that are created of the earth [sic] by God. We believe the vaccine is a claim of the mark of the beast [sic] it is man made and goes against our religion. It starts with the vaccine that controls us [sic] making us unable to make purchases without it. As quoted in revelation 13 verse 16-17 [sic] "and he causeth all, both small and great, rich and poor free and bond to recieve [sic] in the right hand or in their forehead: And that no man might buy or sell, save he that had the mark of the beast or the number of his name." We should be free to make our own choices with the body and soul God gave us.

(*Id.* at ¶ 37). After this passage, Plaintiff wrote that "[he] do[es] believe in medications, not just natural healing." (*Id.*).

While Gregory Panger was not the decision-maker for Plaintiff's exemption request, he did review this request and several other such requests submitted by Plaintiff's colleagues. (*Id.* at ¶ 40). Panger testified that "[t]here wasn't much written"

4

on Plaintiff's request, that the request "sounded more political than it did religious," and that Plaintiff's colleagues' requests were "more compelling." (*Id.*).

James Schwab was Vice President of the Human Resources & Communications department within the Performance Materials and Technologies business group at Honeywell prior to Plaintiff's termination. (*Id.* at ¶ 41). Schwab reviewed twelve of the forty-two religious exemption requests received from the Honeywell Specialty Materials facility, including Plaintiff's. (*Id.* at ¶¶ 44-45).

Schwab has never met Plaintiff, and has no personal knowledge of Plaintiff or his work performance. (*Id.* at ¶ 46). Schwab approved the March 22, 2022, denial of Plaintiff's exemption request "because he stated in his request that his religion does not prevent him from receiving the COVID vaccine." (*Id.* at ¶ 48). Schwab further noted that the only objections Plaintiff raised to the vaccine were of a political or personal nature, including Plaintiff's belief that "our constitution" prohibits forced decision-making, being more "informed" than his parents' generation, and that "we are living in a different time" than his parents. (*Id.* at ¶ 49). Defendant's denial of Plaintiff's exemption request was also based on Plaintiff indicating that he had previously taken a vaccine and would do so again, yet providing a response of "N/A" when asked to describe the difference between this vaccine and the COVID vaccine. (*Id.* at ¶ 50). In its denial, Defendant stated that Plaintiff's exemption request "did not identify any sincerely held religious belief or tenet that would prohibit you from taking the COVID-19 vaccine, beyond freedom of choice." (*Id.* at ¶ 54). Plaintiff was instructed that he would have to be vaccinated for COVID no later than May 5, 2022,

or else he would be terminated. (*Id.* at ¶ 55).

On or around April 22, 2022, Defendant placed Plaintiff on paid suspension for failing to become vaccinated for COVID. (*Id.* at ¶¶ 56-57). On or around April 27, 2022, Plaintiff asked his cardiologist whether the COVID vaccine was safe to take. (*Id.* at ¶ 58). Plaintiff's cardiologist recommended that he take the vaccine. (*Id.*). On May 13, 2022, Plaintiff was terminated by Defendant. (*Id.* at ¶ 60). Plaintiff's termination "solely rested on the fact that he did not get vaccinated" for COVID. (*Id.* at ¶ 61).

Of the forty-two religious exemption requests received from Honeywell Specialty Materials, forty were granted. The two denials were Plaintiff's and Justin Daniel's request, which Defendant denied because it determined that Daniel's request was plagiarized from another employee's submission. (*Id.* at ¶¶ 51-53).

Plaintiff testified in his deposition that he is opposed to the COVID vaccine because he "felt it was the mark of the beast as described in Revelations [sic]." (*Id.* at ¶ 77). Plaintiff admitted that, despite this feeling, he did not personally mention the mark of the beast anywhere in his exemption request. (*Id.* at ¶ 78). Plaintiff's views are not based on any knowledge or understanding about the COVID vaccine passed on from Plaintiff's religious leaders. (*Id.* at ¶ 97). Plaintiff believes that the COVID vaccine is the mark of the beast because he is "being forced to take something" and because COVID "shut the world down." (*Id.* at ¶¶ 79, 85). That being said, the COVID vaccine is the only thing Plaintiff can identify as something a person is forced to take that is also the mark of the beast. (*Id.* at ¶ 80). Further, upon being asked why the

nine daily man-made prescription medications he takes are not the mark of the beast, Plaintiff stated, "I can't say. I don't know." (*Id.* at ¶ 82). When asked how he was to discern which medications he would be allowed to put into his body and which ones he could not, Plaintiff responded with, "[t]hrough my faith." (*Id.* at ¶ 100).

Plaintiff further testified that the COVID vaccine controlled him and impacted his purchasing ability. (*Id.* at ¶ 89). Plaintiff could not point to how this belief was connected to his religion. (*Id.* at ¶ 89). Additionally, Plaintiff is opposed to taking the COVID vaccine because he was allegedly never provided with sufficient information from his cardiologist or his pharmacist, and because the development of the COVID vaccine occurred on an accelerated timeline. (*Id.* at ¶¶ 90, 94). Despite this, Plaintiff admits to never having performed his own research on the contents of the COVID vaccine. (*Id.* at ¶ 92).

Plaintiff lastly maintains that two other employees, Randy Hamilton and John Root (mistakenly referred to as John Ruth in Plaintiff's Response and in part of his deposition testimony), worked in the Honeywell Specialty Materials facility, submitted religious exemption requests, had those requests initially denied, and then were given the opportunity to appeal their respective denials. (Doc. 41 at p. 17). After their respective appeals, Plaintiff asserts that Root and Hamilton's exemption requests were granted. (*Id.*). Plaintiff supports these assertions with his own deposition testimony, in which he admits to never discussing the matter with Root directly, (Doc. 41-2 at p. 190), and to not being privy to the details of Hamilton's exemption request or procedure, (*id.* at pp. 172-174). Plaintiff offers only that he

7

spoke with Hamilton, who apparently told Plaintiff that his exemption request was denied but that he was allowed to resubmit. (*Id.* at p. 174).

Defendant strongly contests Plaintiff's account, and offers sworn statements from Schwab and Lori DelGiudice, the former Vice President of the Human Resources department within the Advanced Materials business group at Honeywell, who personally reviewed the exemption requests of Root and Hamilton. (Docs. 35-5, 45-1). Both asserted that neither Root nor Hamilton's exemption requests were ever denied. (*Id.*). DelGiudice also averred that Defendant did not have any formal appeal process for denials of religious exemption requests at the time of Plaintiff's termination. (Doc. 45-1 at ¶ 7).

### B. Procedural History

On December 1, 2022, Plaintiff sued Defendant, alleging wrongful termination and disparate treatment based on religion in violation of Title VII. (Doc. 1). Plaintiff seeks exemplary damages due to Defendant's alleged "gross negligence, fraud and/or malice." (Doc. 1 at ¶ 35). Defendant filed an Answer to Plaintiff's Complaint that denied each of Plaintiff's claims. (Doc. 13).

Now, Defendant moves for summary judgment on each of Plaintiff's claims, and argues that Plaintiff cannot establish a *prima facie* claim for either failure to accommodate a religious observance or for disparate treatment based on religion. (Doc. 35). Plaintiff opposes Defendant's Motion. (Doc. 41).

## II.    ANALYSIS

### A. Standard

Federal Rule of Civil Procedure ("Rule") 56(a) provides that the Court may grant summary judgment only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the movant bears its burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* at 587. Stated differently, "[i]f the party with the burden of proof cannot produce any summary judgment evidence on an essential element of [her] claim, summary judgment is required." *Geiserman v. MacDonald*, 893 F.2d 787, 793 (5th Cir. 1990). Further, "on a motion for summary judgment, the evidence proffered by the plaintiff to satisfy his burden of proof must be competent and admissible at trial." *Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012). "[U]nsubstantiated assertions are not competent summary judgment evidence." *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).

### B. Discussion

Defendant argues that Plaintiff has not provided any admissible evidence establishing his Title VII claims for 1) failure to provide a reasonable accommodation or 2) disparate treatment based on religion. For written reasons provided below,

Defendant prevails as to both arguments, and Plaintiff's claims will be dismissed.

> **i. Plaintiff has not provided competent summary judgment evidence showing that Defendant failed to accommodate his sincerely held religious beliefs.**

Courts analyze Title VII claims for failure to accommodate religious observances under a "burden-shifting framework akin to the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), burden-shifting framework." *Davis v. Fort Bend Cnty.*, 765 F.3d 480, 485 (5th Cir. 2014). "The employee must first establish a prima facie case of religious discrimination." *Id.* If the employee does so, "the burden shifts to the defendant to demonstrate either that it reasonably accommodated the employee, or that it was unable to reasonably accommodate the employee's needs without undue hardship." *Id.* Prima facie cases of religious discrimination can be established by a plaintiff presenting evidence that "1) []he held a bona fide religious belief, 2) [his] belief conflicted with a requirement of [his] employment, 3) [his] employer was informed of [his] belief, and 4) []he suffered an adverse employment action for failing to comply with the conflicting employment requirement." *Id.* (citing *Tagore v. United States*, 735 F.3d 324, 329 (5th Cir. 2013)). "Bona fide religious beliefs include 'moral or ethical beliefs as to what is right and wrong which are sincerely held with the strength of traditional religious views.'" *Id.* (quoting 29 C.F.R. § 1605.1). Further, while "judicial inquiry into the sincerity of a person's religious belief ' must be handled with a light touch, or judicial shyness,'" *id.* (quoting *Tagore*, 735 F.3d at 329), beliefs that "are based on 'purely secular considerations' or that are 'merely a matter of personal preference' are not protected." *Troulliet v. Gray Media Grp., Inc.*, No. CV 22-5256, 2023 WL 2894707, at *4 (E.D. La. Apr. 11, 2023) (quoting *Wisconsin*

*v. Yoder*, 406 U.S. 205, 215–16 (1972)).

Plainly, Plaintiff has failed to provide sufficient admissible evidence to raise a genuine issue of material fact that he both 1) had a bona fide religious belief at the time of termination and 2) informed Defendant of this religious belief. Plaintiff's religious exemption request does not provide any explanation as to what specific religious beliefs prevent him from getting the COVID vaccine. (*See* Doc. 41-4). When asked why he could not receive a COVID vaccine, Plaintiff stated "I am a Baptist but my beliefs go[] way beyond that[,] I bel[ie]ve our creator gave us this gift to choose and decide for ourselves" and that "it is also in our [C]onstitution [that] no man should be forced to do something he [or] she is not comfortable with." (*Id.* at p. 4). Plaintiff identified no other products he would refuse to put into his body. (*Id.* at p. 5).

Plaintiff did not identify the sort of religious awakening that he now relies upon to support his Title VII claim, and instead stated that "[I] have been considered a [B]aptist all my life." (*Id.* at pp. 4, 6). Asked point-blank what religious tenet prevents him from receiving the COVID vaccine, Plaintiff stated "[I] won[']t say i[t] prevents me but cert[ai]n passages le[ad] me to feel very strongly about my dec[i]sion." (*Id.* at p. 7). In the "Additional Information" form filled out by Plaintiff several weeks after the submission of his religious exemption request, Plaintiff denied that use of fetal cell lines in the development of the COVID vaccine was the reason for his refusal to take said vaccine, and stated that even should the COVID vaccine be developed in a way that did not use fetal cell linings, Plaintiff would still refuse to be administered a shot "because all of this is still experimental and long

11

term effects ha[ven']t been realized." (Doc. 41-6 at p. 2). Within Plaintiff's third-party attestation letter, his daughter states that the vaccine is the "mark of the beast" in part because it is man-made and in part because those who opt against taking the vaccine are "unable to make purchases." (Doc. 41-5 at p. 3). However, Plaintiff contradicted his daughter's account when he wrote "I do believe in medications[,] not just natural healing." (*Id.*). These materials form the entirety of what Plaintiff provided Defendant to support his assertions that he had a sincere religious belief that prevented him from getting the COVID vaccine prior to his termination. Plaintiff has not identified any other evidence of communication with Defendant prior to his termination that touched on the sincerity or tenets of his religious beliefs.

While the Court must treat the sincerity of Plaintiff's religious beliefs with a "light touch," *Tagore*, 735 F.3d at 328, by his own admission, Plaintiff's religious beliefs did not prevent him from receiving a COVID vaccine. (Doc. 41-4 at p. 7). Further, the only specific reasons provided by Plaintiff to Defendant prior to his termination for his refusal to take the COVID vaccine were non-religious in nature. (*See id.*). Plaintiff stated that his freedom of choice is a gift from "our creator," and that it is also guaranteed under the Constitution. (*Id.* at p. 4). Religious beliefs do not afford a citizen with unbridled freedom of choice, *see Church of Lukumi Babalu Aye, Inc. v. City of Hialeah.*, 508 U.S. 520, 531-532 (1993), and such a summary statement, taken alone, is insufficient to make Defendant aware of Plaintiff's sincerely held religious belief. *See Reichert v. Infusion Partners, L.L.C.*, No. CV 22-5450, 2023 WL 4685377, at *4 (E.D. La. July 21, 2023); *see also Finkbeiner v. Geisinger Clinic*, 623

F. Supp. 3d 458, 465 (M.D. Pa. 2022), *appeal dismissed*, No. 22-2714, 2023 WL 6057495 (3d Cir. Sept. 18, 2023) (dismissing plaintiff's Title VII failure-to-accommodate claim when said claim was based on plaintiff's belief that she had a "God given right to make [her] own choice").[2] Rather, Plaintiff's reference to freedom of choice issues and their connection to the Constitution evinces essentially legal, as opposed to religious, concerns with the vaccine mandate. (*See* Doc. 41-4 at p. 4). Plaintiff also provided that his parents were not "as informed as we are today" as a basis for refusing the vaccine. (Id. at p. 9). This too evokes a non-religious concern with the COVID vaccine. Finally, in Plaintiff's supplemental response, he noted that he would not take the vaccine because "all of this is still experimental and long-term effects ha[v]en[']t been realized." (Doc. 41-6 at p. 2).

Plaintiff's specific responses thus demonstrate that he made Defendant aware

---

[2] Plaintiff's argument that this and other general references to religious themes triggered an obligation for Defendant to engage in an "interactive process" with Plaintiff relating to his religious beliefs, whereby his related refusal to take the COVID vaccination would be substantiated, is unfounded for several reasons. First, the caselaw on which Plaintiff relies concerns the Americans with Disability Act, and not Title VII. (*See* Doc. 41 at p. 16); *see also Thompson v. Microsoft Corp.*, 2 F.4th 460 (5th Cir. 2021). Second, the interactive process requirement within this caselaw provides that once an accommodation is requested by a qualified individual with a disability, the employer must engage in discussions with the requesting individual to find an appropriate accommodation for said individual's limitation. *Delaval v. PTech Drilling Tubulars, L.L.C.*, 824 F.3d 476, 481 (5th Cir. 2016). Here, Plaintiff stated in his religious exemption request form that he did not require any accommodation. (Doc. 41-4 at p. 9). Rather, Plaintiff's preferred course of action was to simply remain unvaccinated and continue to follow distancing and masking protocols. (*Id.*). Third, it is not the purpose of the interactive process requirement to obligate employers to conduct fact-finding missions into the origin of an employee's accommodation request. That responsibility remains with potential plaintiffs. *See E.E.O.C. v. Chevron Phillips Chem. Co.*, 570 F.3d 606, 621 (5th Cir. 2009) ("This court has recognized that where the disability, resulting limitations, and necessary reasonable accommodations, are not open, obvious, and apparent to the employer, the initial burden rests primarily upon the employee . . . to specifically identify the disability and resulting limitations, and to suggest the reasonable accommodations." (internal citations omitted)).

of his serious medical and legal concerns with the COVID vaccine, as opposed to any conflict with his religious beliefs. Medical and legal concerns are insufficient bases for the constitutional protections claimed by Plaintiff. *See Wisconsin v. Yoder*, 406 U.S. 205, 215-16 (1972) (claims "must be rooted in religious belief" and not "based on purely secular considerations"); *see also Lawhead v. Brookwood Mgmt. Co., LLC*, No. 5:22-cv-00886, 2023 WL 2691718 (N.D. Ohio Mar. 29, 2023) (dismissing plaintiff's claim when she simply asserted that the vaccine violated her "deeply held religious beliefs" while also specifically objecting to the "long-term efficacy and safety" of the vaccine); *Prida v. Option Care Enterprises, Inc.*, No. 5:23-CV-00905, 2023 WL 7003402, at *4 (N.D. Ohio Oct. 24, 2023) (collecting cases wherein courts have dismissed matters when plaintiffs "cloak[ed] scientific or political beliefs in religious language").

Title VII failure-to-accommodate claims are only cognizable when a plaintiff presents evidence that he informed his employer of a sincere religious belief that conflicts with an employment requirement. *Davis*, 765 F.3d at 485 (5th Cir. 2014) (citing *Tagore*, 735 F.3d at 329 (5th Cir. 2013)). Plaintiff has failed to show that he informed Defendant of any sincerely held religious beliefs that prevented him from taking the COVID vaccine prior to his termination. Because the Court finds that Plaintiff "fails to make a showing sufficient to establish the existence of an element essential to [his] case," Plaintiff's Title VII failure to accommodate claim will be dismissed. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

Plaintiff argues that he has offered sufficient evidence as to this element, and

heavily relies upon the proposed testimony from Professor Frank S. Ravitch, a law professor at the Michigan State University of Law, to do so. (*See* Doc. 41). For the following reasons, Professor Ravitch's offered testimony is inadmissible and will not be considered.

In Professor Ravitch's expert report, he concludes, based on Plaintiff's submissions to Defendant described above, several Bible verses, and a roughly thirty-minute phone call conducted on September 18, 2023, (Doc. 36-2 at pp. 36-37), that in his "expert opinion," "Plaintiff had a sincerely held belief for refusing the COVID-19 vaccine" and that "Honeywell inappropriately dissected [Plaintiff's] religious reasoning and found his request for an accommodation insincere in violation of Title VII." (Doc. 41-8 at p. 9). Such testimony, primarily concerned with a previous mental state of Plaintiff, is obviously well beyond the scope of Professor Ravitch's expertise. Professor Ravitch is a law professor, not a time-travelling mind-reader. Professor Ravitch's second conclusion is similarly inadmissible, and rides roughshod over the traditional roles of expert witnesses, judges, and juries.

"Federal Rule of Evidence 702 permits opinion testimony from 'a witness qualified as an expert by knowledge, skill, experience, training, or education' if such testimony will assist the trier of fact" and if "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." *Hathaway v. Bazany*, 507 F.3d 312, 317 (5th Cir. 2007). Professor Ravitch's expert report does not detail any sort of methodology used to determine that Plaintiff

holds a sincere religious belief, nor does Professor Ravitch identify any data, facts, or sources that informed his opinion other than case law. (*See* Doc. 41-8).

Professor Ravitch instead seems to primarily support his conclusions by simply repeating what Plaintiff presumably told him in their approximately thirty-minute telephone interview – that Plaintiff has a sincerely held religious belief against taking the COVID vaccine because he and his family live a "natural lifestyle." (*Id.* at p. 6). Professor Ravitch does not attempt to describe what he means by "natural lifestyle," unless this refers to the body-is-a-temple philosophy asserted in "numerous" other claims for religious exemptions to the COVID vaccine. (*Id.* at pp. 6-7). If that is what he intends to claim, then Professor Ravitch is either unaware or fails to address that Plaintiff is presently taking a panoply of daily medications and that Plaintiff has indicated no opposition to vaccines outside of the COVID vaccine. (Doc. 35-1 at ¶¶ 9, 84).

Professor Ravitch's proposed testimony appears to be essentially the same as Plaintiff's, albeit "dressed up and sanctified as the opinion of an expert." *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 424 (5th Cir. 1987). This is obviously improper. The purpose of an expert witness is to "help the trier of fact to understand the evidence or to determine a fact in issue" based on the expert's specialized knowledge and application of reliable principles and methods, *United States v. Venegas*, No. MO-13-CR-61, 2013 WL 12098760, at *3 (W.D. Tex. Aug. 28, 2013), *aff'd*, 594 F. App'x 822 (5th Cir. 2014), rather than to simply parrot a plaintiff's claims. Professor Ravitch and Plaintiff are reminded that "without more than credentials and a subjective

opinion, an expert's testimony that 'it is so' is not admissible." *Viterbo*, 826 F.2d at 424.

Even were the Court to find that Professor Ravitch used a sanctioned methodology in arriving at his conclusion as to Plaintiff's sincerely held religious beliefs, that this methodology was reliable, and that Professor Ravitch reliably applied this credible methodology to the available facts of the case, Professor Ravitch's testimony would still be excluded. Professor Ravitch has been offered to testify that Plaintiff held a sincere religious belief that prevented him from getting the COVID vaccine. (Doc. 41-8 at p. 9). This proposed testimony is, at its core, a credibility determination going towards the ultimate question of fact and is based almost solely on what Plaintiff has told Professor Ravitch. However, "[e]xpert witness[es] may not usurp the jury's function to weigh evidence and make credibility determinations." *United States v. Farrell*, 563 F.3d 364, 377 (8th Cir. 2009). Credibility determinations are, categorically, "a matter for the jury." *Matthews v. Kroger Texas, LP*, No. 4:13-CV-090-Y, 2015 WL 11022774, at *2 (N.D. Tex. Aug. 21, 2015); *see also United States v. Binder*, 769 F.2d 595, 602 (9th Cir. 1985); *Terral River Serv., Inc. v. SCF Marine, Inc.*, No. 3:19-CV-00406, 2020 WL 7711365, at *5 (W.D. La. Dec. 28, 2020).

In addition to the proposed testimony regarding his beliefs, Plaintiff seeks to have Professor Ravitch testify that Defendant "inappropriately dissected [Plaintiff's] religious reasoning and found his request for an accommodation insincere in violation of Title VII. The fact that [Plaintiff's] religious explanations were not sophisticated is

no defense under settled precedent."[3] (Doc. 41-8 at p. 9). These conclusions are similarly subject to exclusion by the Court. Attorney expert witnesses are not permitted to provide legal determinations of the issues existing within a given matter. *Askanase v. Fatjo*, 130 F.3d 657, 673 (5th Cir. 1997); *Est. of Sowell v. United States*, 198 F.3d 169, 171 (5th Cir. 1999). Further, it is the role of the Court, and not any expert witness, to describe the relevant and applicable law. *Askanase*, 130 F.3d at 673; *Babin v. Plaquemines Par.*, 421 F. Supp. 3d 391, 397 (E.D. La. 2019).

Professor Ravitch's proposed testimony is inadmissible on multiple fronts, and the Court will not consider it for summary judgment purposes. *See Bellard*, 675 F.3d at 460. Consequently, and for all of the foregoing, Plaintiff's Title VII failure-to-accommodate claim be and is hereby **DISMISSED WITH PREJUDICE**.

### ii.  Plaintiff has failed to provide admissible evidence in support of his disparate treatment claim.

For Title VII disparate treatment claims to survive motions for summary judgment, plaintiffs must first establish a *prima facie* case of discrimination. *Okoye*

---

[3] Professor Ravitch additionally spends considerable time musing over the supposedly less-than-ideal wording of one of Defendant's questions on its religious exemption request form. In the eyes of Professor Ravitch, the question: "If a central tenet of this religion prevents you from getting a COVID-19 vaccine, please explain the basis" is "a bit problematic" because "prevent" could refer to a physical incapacity *or* to a religious prohibition. (Doc. 41-8 at p. 8). Professor Ravitch's implication here is unclear. Does Professor Ravitch mean to imply that certain religious tenets, strongly held, would form a physical barrier between a devoutly religious person and the COVID vaccine? Regardless of Professor Ravitch's concerns over the allegedly arcane meaning of the word "prevent," Plaintiff appeared to understand the question at the time he completed the religious exemption request. Plaintiff did not request any sort of clarification from Defendant and provided a response indicating that he understood the question to be seeking a description of the religious beliefs that conflicted with being administered a COVID vaccine. (*See* Doc. 41-4 at p. 7 ("[I] won[']t say [it] prevents me, but cert[ain] passages [lead] me to feel very strongly about my dec[i]sion.")).

*v. Univ. of Texas Houston Health Sci. Ctr.*, 245 F.3d 507, 512-513 (5th Cir. 2001). A plaintiff may do so by providing evidence "'that []he: (1) is a member of a protected class; (2) was qualified for [his] position; (3) was subject to an adverse employment action; and (4) was replaced by someone outside the protected class,' or in the case of disparate treatment, shows 'that others similarly situated were treated more favorably.'" *Id.* at 513 (quoting *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 404 (5th Cir. 1999)). To satisfy this fourth element, Plaintiff must identify "at least one coworker outside of his protected class who was treated more favorably 'under nearly identical circumstances.'" *Alkhawaldeh v. Dow Chem. Co.*, 851 F.3d 422, 426 (5th Cir. 2017) (quoting *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009)). Failure to identify a comparator outside of a plaintiff's protected class justifies dismissal of the Title VII claim. *Id.* at 427.

Plaintiff identifies Randy Hamilton and John Root as comparators. (Doc. 41 at p. 17). Plaintiff, Hamilton, and Root all worked at the same Honeywell facility, and Plaintiff alleges, without any additional proof, that Hamilton and Root were treated more favorably in the religious exemption application process because both of their initial applications were rejected by Defendant, and both employees were given leave to appeal this rejection. (*Id.*). Plaintiff alleges that the Hamilton and Root's appeals resulted in their respective religious exemption applications being granted, whereas Defendant denied Plaintiff's exemption application and refused Plaintiff's request to appeal or resubmit. (*Id.*). Plaintiff identifies his own deposition testimony as support for this account, in which he states that he heard that Root's exemption application

was denied, and that Hamilton told him that Defendant initially denied Hamilton's exemption request. (Doc. 41-2 at pp. 172-174, 190).

Such "unsubstantiated assertions" are insufficient to defeat summary judgment. *See Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008). Further, Plaintiff's testimony relies on hearsay statements, and are therefore inadmissible for summary judgment purposes. *See Okoye v. Univ. of Texas Houston Health Sci. Ctr.*, 245 F.3d 507, 510 (5th Cir. 2001) ("Because these statements are hearsay, they are not competent summary judgment evidence."). Meanwhile, Defendant offers a sworn declaration from Lori DelGiudice, who reviewed Root and Hamilton's religious exemption forms, that stated that, based on her personal knowledge, neither Root nor Hamilton's exemption applications were ever denied, nor was either employee ever allowed an "appeal." (Doc. 45-1). Because Plaintiff has not provided any admissible evidence showing that at least one coworker outside of his protected class was treated more favorably than he, Plaintiff's Title VII claim for disparate treatment is subject to dismissal. *See Alkhawaldeh*, 851 F.3d at 426.

In the alternative, even were it the case that Root and Hamilton were treated more favorably throughout the religious exemption process, Plaintiff has still failed to allege the facts necessary to show that either of these employees are actually Plaintiff's comparators. Plaintiff has not alleged that either Root or Hamilton is of a different religion than Plaintiff, and Plaintiff has admitted that neither Root nor Hamilton has the same job as Plaintiff. (Doc. 35-1 at ¶ 65). Plaintiff's Title VII

disparate treatment claims therefore alternatively fail for lack of an identified comparator. *See Alkhawaldeh*, 851 F.3d at 427.

### III.    CONCLUSION

Accordingly,

**IT IS ORDERED** that Defendant's **Motion For Summary Judgment (Doc. 35)** be and is hereby **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's action be and is hereby **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Defendant's **Motion To Exclude Expert Testimony Of Frank S. Ravitch (Doc. 36)** be and is hereby **TERMINATED AS MOOT**.

**IT IS FURTHER ORDERED** that Defendant's **Motion In Limine (Doc. 54)** be and is hereby **TERMINATED AS MOOT**.

Judgment shall issue separately.

Baton Rouge, Louisiana, this 12th day of June, 2024

**JUDGE BRIAN A. JACKSON**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**