UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

DONALD WRIGHT                                              CIVIL ACTION

VERSUS

HONEYWELL INTERNATIONAL,                       NO. 22-00928-BAJ-SDJ
INC.

## RULING AND ORDER

Before the Court is Defendant's **Motion For Summary Judgment (Doc. 78)**. The Motion is opposed. (Doc. 84). Defendant filed a Reply Brief. (Doc. 88). For the following reasons, Defendant's Motion (Doc. 78) is **DENIED**.

### I.    FACTUAL BACKGROUND

The United States Court of Appeals for the Fifth Circuit articulated a brief summary of this case as follows:

> [Plaintiff] Donald Wright worked for [Defendant] Honeywell International for fourteen years. When Honeywell implemented a mandatory COVID-19 vaccination policy in 2021, Wright applied for a religious exemption to the policy but was denied. Honeywell then fired Wright for failing to get the vaccine. Wright sued Honeywell under Title VII for religious discrimination and disparate treatment based on religion.

(Doc. 70 at 1).

The following facts are undisputed. On or about February 11, 2008, Plaintiff began his employment with Defendant. (Doc. 97 ¶ 1). Beginning on February 11, 2008, and through his termination on May 13, 2022, Defendant employed Plaintiff at the Honeywell Specialty Materials facility in Baton Rouge,

Louisiana ("Honeywell Specialty Materials"). (*Id.* ¶ 2).

Honeywell Specialty Materials is a continuous operation chemical processing plant, operating 24 hours per day, 365 days per year. (*Id.* ¶ 3). Defendant hired Plaintiff as a C-Class Operator, and he most recently held the position of Dock B Operator, working at an hourly rate of about $30.41 per hour for approximately 40 hours per week with occasional overtime. (*Id.* ¶ 4).

Beginning in March 2020, the COVID-19 ("COVID") pandemic posed a grave threat to the health and safety of Americans and individuals across the world. (*Id.* ¶ 10). On September 9, 2021, President Joseph R. Biden, Jr. issued Executive Order ("E.O.") 14042, entitled "Ensuring Adequate COVID-19 Safety Protocols for Federal Contractors." (*Id.* ¶ 11). E.O. 14042 required federal contractors, such as Defendant, to ensure that all employees who work on or in connection with a federal contract to become fully vaccinated against COVID-19 or receive approval for a medical or religious exemption. (*Id.* ¶ 12).

In response to E.O. 14042, Defendant adopted a mandatory COVID vaccination policy ("Vaccination Policy") in late 2021. (*Id.* ¶ 13). By implementing its Vaccination Policy, Defendant prioritized the health and safety of its employees (and the public with whom its employees interact), and the Company made the decision to establish this policy pursuant to the following: (1) guidance from public health organizations like the U.S. Centers for Disease Control and Prevention ("CDC");

(2) President Biden's E.O. 14042; and (3) other medical organizations' strong recommendations supporting mandatory vaccinations. (*Id.* ¶ 14).

Defendant's Vaccination Policy set forth Defendant's strong belief "that vaccinations remain a vital way to protect the health and safety of [its] employees, work sites, and customers." (*Id.* ¶ 15). Defendant further cited in its Vaccination Policy its published study finding that "87% of respondents surveyed on perceptions and feelings about health and safety in the workplace expressed concern about returning to an office as COVID-19 variants spread," and Defendant determined that "a largely vaccinated workforce . . . help[s] to address those concerns. (*Id.* ¶ 16).

Plaintiff received a copy of Defendant's Vaccination Policy via email. (*Id.* ¶ 17). Under the Vaccination Policy, Plaintiff was required to get fully vaccinated for COVID by April 15, 2022, unless he requested a medical or religious exemption and Defendant granted that request. (*Id.* ¶ 18). Defendant's religious exemption request policy states the following:

> Honeywell ("Company") is committed to providing equal employment opportunities without regard to any protected status and a work environment that is free of unlawful harassment, discrimination, and retaliation. As such, the Company takes its obligations to provide reasonable accommodation to persons with sincerely held religious beliefs seriously. When requested, the Company will provide an exemption/accommodation for an employee/candidate who adequately articulates a sincerely held religious belief that prohibits the employee/candidate from receiving a COVID-19 vaccine, provided the requested exemption/accommodation is reasonable and does not create an undue hardship for the Company or pose a direct threat to the health and/or safety of others in the workplace and/or to the requesting employee/candidate.

(*Id.* ¶ 19).

Plaintiff requested a religious exemption to Defendant's Vaccination Policy. (*Id.* ¶ 20). On or around February 22, 2022, Plaintiff submitted his initial religious exemption request from the Vaccination Policy. (*Id.* ¶ 21). By signing his request, Plaintiff verified the following:

> [T]he information that you are submitting in support of your request for an exemption/accommodation is complete and accurate to the best of your knowledge, and you understand that any intentional misrepresentation contained in this request may result in discipline in action up to and including termination of employment. You also understand that your request for an exemption/accommodation may not be granted if (i) it is determined that your beliefs are not religious or sincerely held, (ii) your requested accommodation is not reasonable, (iii) it poses a direct threat to the health and/or safety of others in the workplace and/or to you, or (iv) it creates an undue hardship on the Company.

(*Id.* ¶ 22).

Plaintiff's exemption request indicated he had never sought a religious exemption or accommodation for a mandatory vaccine for himself or his minor children in the past, stating, "My parents [weren't] as informed as we are today we are living in a different time." (*Id.* ¶ 23). In response to the request's prompt to "Please thoroughly describe the nature of your religious beliefs and why it prevents you from getting a COVID-19 vaccine," Plaintiff responded:

> I am a Baptist, but my beliefs go[] way beyond that [I] bel[ie]ve our creator gave us this gift to choose and decide for ourselves it is also in our constitution no man should be forced to do something he [or] she is not comfortable with and in my opinion this is a decision [that] shouldn[']t require people having to choose between one [or] another.

4

(*Id.* ¶ 24).

Plaintiff described the "gift" referenced in his exemption request as "[m]y temple" and "[t]he freedom to choose what I put in my own temple" or "body". (*Id.* ¶ 25). In response to the request's prompt stating "If a central tenet of this religion prevents you from getting a COVID-19 vaccine, please explain the basis[,]" Plaintiff responded, "[I] won[']t say i[t] prevents me but cert[ai]n passages le[ad] me to feel very strongly about my dec[i]sion." (*Id.* ¶ 26).

In response to the request's prompt to either: (1) state if he had always followed his identified religious beliefs; or (2) if not, specify when and why his religious belief changed, Plaintiff responded, "N/A" or "not applicable." (*Id.* ¶ 27). Plaintiff stated in his request that he remembered receiving one vaccine in the last five years. (*Id.* ¶ 28). Plaintiff clarified at his deposition that he was referring to getting a tetanus vaccine in 2015 and noted he "didn[']t like the respon[s]e [his] body had from i[t]." (*Id.*). In response to the request's prompt to explain the difference between his prior tetanus vaccine and the COVID vaccine in terms of his sincerely held religious beliefs, Plaintiff responded, "N/A" or "not applicable." (*Id.* ¶ 29).

In response to the request's prompt to "Describe the accommodations you believe are needed to enable you to perform the essential functions of this job," Plaintiff stated, "[I] do not need accom[mo]dation [I] mainly work alone there are o[nly] two [I] come in contact with and [I] try to keep my distance and wear a mask." (*Id.* ¶ 30).

Defendant asked Plaintiff to supplement his exemption request because he failed to attach a third-party attestation letter to his initial request, as required in the request's instructions. (*Id.* ¶ 31). On or around March 14, 2022, Plaintiff submitted a supplemental request, attaching a handwritten letter from his daughter, Damera Gallow, which stated:

> It is in our belief that humans should only use things that are created of the earth by God. We believe the vaccine is a claim of the mark of the beast it is man made and goes against our religion. It starts with the vaccine that controls us making us unable to make purchases without it. As quoted in Revelation [Chapter] 13[,] Verse 16–17[,] "and he causeth all, both small and great, rich and poor[,] free and bond to rec[ei]ve in the right hand of in their forehead: And that no man might buy or sell, save he that had the mark of the beast or the number of his name." We should be free to make our own choices with the body and soul God gave us.

(*Id.* ¶ 32).

James Schwab was Vice President, Human Resources & Communications within the Performance Materials and Technologies ("PMT") business group at Honeywell during the implementation of Defendant's Vaccination Policy, and he took part in the review of employee requests for religious and medical exemptions from this policy. (*Id.* ¶ 33). With legal guidance from Defendant's Legal Department, Schwab personally reviewed medical and religious exemption requests for some of the PMT employees, including some employees at the Honeywell Specialty Materials facility in Baton Rouge, Louisiana, which was part of PMT. (*Id.* ¶ 34). For those exemption requests Schwab reviewed of certain PMT employees, Schwab was the decision-maker for whether to approve or deny the exemption request. (*Id.* ¶ 35).

6

Schwab reviewed 12 of the 42 religious exemption requests received from Honeywell Specialty Materials, while other decision-makers reviewed the remaining requests at this facility. (*Id.* ¶ 36). Schwab personally reviewed Plaintiff's religious exemption request. (*Id.* ¶ 37).

Of the 42 religious exemption requests received from Honeywell Specialty Materials, Defendant granted 40 requests and denied 2 requests. (*Id.* ¶ 39). The 2 denials were Plaintiff's request and Justin Daniel's request. (*Id.* ¶ 40). Daniel's request was denied because he plagiarized another employee's exemption request. (*Id.* ¶ 41). Defendant also denied Plaintiff's request because he indicated he received a prior non-COVID vaccine but provided a response of "N/A" or "not applicable" to the prompt asking him to explain what was different about the COVID vaccine in terms of his sincerely held religious beliefs. (*Id.* ¶ 38).

On or around March 22, 2022, Defendant issued Plaintiff a written denial, signed by Schwab, of Plaintiff's request for religious exemption to Defendant's Vaccination Policy, stating the following:

> While we do not doubt that you are a religious person, your submission did not adequately identify any sincerely held religious belief or tenet that would prohibit you from taking the COVID-19 vaccine, beyond freedom of choice. Your submission also indicates that you previously received a vaccine and didn't like the response your body had from it. The information contained in your submission is not sufficient to support a religious accommodation under the law.

(*Id.* ¶ 42).

Because of the denial of Plaintiff's religious exemption request, Defendant informed Plaintiff that, per the Vaccination Policy, he must get vaccinated for COVID no later than the extended deadline of May 5, 2022, or else he would be terminated. (*Id.* ¶ 43). On or around April 22, 2022, Defendant placed Plaintiff on suspension because he was not vaccinated for COVID-19. (*Id.* ¶ 44).

Plaintiff did not get the COVID vaccine on or before May 5, 2022. (*Id.* ¶ 46). On May 13, 2023, Human Resource Manager Gregory Panger telephoned and texted Plaintiff to inform him that, effective that day, Plaintiff's employment was terminated. (*Id.* ¶ 47). Plaintiff's "termination solely rested on the fact that he did not get vaccinated" for COVID following Defendant's denial of Plaintiff's religious exemption request, in violation of the Vaccination Policy. (*Id.* ¶ 48).

Plaintiff testified that when he was terminated, Defendant told him his reason for termination was "failure to follow [Defendant's] COVID mandates." (*Id.* ¶ 49). Plaintiff testified no one at Honeywell told him he was being terminated because of his religion. (*Id.* ¶ 50). Prior to Plaintiff's termination, Plaintiff never complained to anyone at Honeywell that Defendant was discriminating against him. (*Id.* ¶ 52).

## II.    PROCEDURAL HISTORY

This is the second time Defendant has moved for summary judgment in this case. In Defendant's initial Motion for Summary Judgment, Defendant asked the Court to issue summary judgment in its favor on both of Plaintiff's claims: (1) failure to accommodate a religious observance under Title VII; and (2) disparate treatment

based on religion under Title VII. (*Id.*).

The Court granted Defendant's Motion and dismissed both of Plaintiff's claims under Title VII, finding, in relevant part, that Plaintiff did not provide competent summary judgment evidence showing that Defendant failed to accommodate his sincerely held religious beliefs. (Doc. 57). Plaintiff moved for reconsideration of the Court's Ruling and the Court denied the Motion. (Doc. 60; Doc. 66).

Plaintiff then appealed the portion of the Court's Ruling dismissing his failure to accommodate claim to the Fifth Circuit. (Doc. 67). Plaintiff did not appeal the portion of the Court's Ruling dismissing his disparate treatment claim.[1]

On appeal, the Circuit reversed the Court's Ruling and remanded the case to this Court for further proceedings. The Circuit found:

> Viewing the evidence in the light most favorable to [Plaintiff] and drawing all reasonable inferences in his favor, *Gray*, 18 F.4th at 467, a reasonable jury could find that [Plaintiff] held at least a mixed motive for his vaccine refusal: a bona fide religious belief alongside political beliefs and personal preference.

(Doc. 70 at 10). The Circuit thus concluded: "Because a plaintiff's sincerity in espousing a religious practice 'is largely a matter of individual credibility,' *Davis*,

---

[1] Because Plaintiff did not appeal the Court's Ruling dismissing his disparate treatment claim, the disparate treatment claim remains dismissed. Accordingly, Plaintiff's failure to accommodate claim is the only claim remaining in this case. (*See* Doc. 70 at 6 (The Circuit's Mandate emphasizing: "[Plaintiff] appeals only the district court's ruling as to his religious discrimination claim, not its ruling as to his disparate treatment claim."); *see also* Doc. 97 at 5 (The parties' Joint Pretrial Order indicating that "Plaintiff's disparate treatment claim based on religion was dismissed by the district court and was not appealed to the Fifth Circuit. Accordingly, the only remaining claim is Plaintiff's Title VII failure to accommodate claim.")).

765 F.3d at 485–86 (quoting *Tagore*, 735 F.3d at 328), [Plaintiff's] evidence would be better weighed by a jury than by the court at the summary judgment stage." (*Id.*). The Circuit further found that Plaintiff submitted sufficient evidence for a reasonable jury to return a verdict finding that Plaintiff informed Defendant that his belief was religious. (*Id.*).

Following the Circuit's Mandate, the Court issued an Order requiring the parties to file a Joint Status Report addressing the remaining claims and defenses in light of the Circuit's Mandate. (Doc. 71). The parties filed the Joint Status Report, indicating the following:

> The Court [] did not rule on the portion of Defendant's Motion for Summary Judgment seeking dismissal of Plaintiff's claim for punitive damages. Doc. 35-2, pp. 28-29; see Doc. 57. Defendant's Motion for Summary Judgment has been fully briefed by the parties. Docs. 35, 41, 45. Defendant respectfully requests that this Court issue a substantive ruling on Defendant's request for dismissal of Plaintiff's punitive damages claim in this matter.

(Doc. 74 at 2). To promote clarity in the record, the Court ordered the parties to re-file the Motion at issue. (Doc. 75).

In response to the Court's Order, Defendant re-filed its Motion for Summary Judgment in its entirety as originally filed. (*See* Doc. 77 at 1). Defendant notified the Court, however, that it only seeks a Ruling concerning Plaintiff's claim for punitive damages. (*Id.*). Defendant further notified the Court that "[t]he remaining arguments in Defendant's Motion for Summary Judgment are not at issue before this Court, as this Court, and the United States Fifth Circuit Court of Appeals, have already

10

addressed these arguments in substantive rulings." (*Id.* n.1). Thus, the Court will address only the portion of Defendant's Motion asking the Court to dismiss Plaintiff's claim for punitive damages.

For the following reasons, Defendant's Motion (Doc. 78) is **DENIED.**

## III.   LEGAL STANDARD

A district court should "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Funches v. Progressive Tractor & Implement Co., L.L.C.*, 905 F.3d 846, 849 (5th Cir. 2018) ("This occurs when a party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.").

For issues on which the movant bears the burden of proof at trial, they "must come forward with evidence which would entitle [them] to a directed verdict if the evidence went uncontroverted at trial." *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264–65 (5th Cir. 1991). The nonmoving party can then defeat the motion by either countering with evidence establishing a genuine dispute of material fact, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

Where the nonmovant bears the burden of proof at trial, the moving party must offer evidence that undermines the nonmovant's claim or point out the absence of

evidence supporting essential elements of the claim. *See Lujan v. Nat'l Wildlife Federation*, 497 U.S. 871, 885 (1990). Once the movant shows entitlement to judgment as a matter of law, the nonmovant must bring forward evidence to create a genuine issue of material fact. *Giles v. Gen. Elec. Co.*, 245 F.3d 474, 493 (5th Cir. 2001). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Darden v. City of Fort Worth*, 880 F.3d 722, 727 (5th Cir. 2018).

## IV.    DISCUSSION

Defendant asks the Court to issue summary judgment in its favor on Plaintiff's claim for punitive damages, arguing that Plaintiff is not entitled to punitive damages because Defendant reasonably believed that its conduct in reviewing and denying Plaintiff's request was lawful. (Doc. 78-2 at 29).

Plaintiff responds that the record before the Court would permit a jury to find reckless indifference because Defendant denied Plaintiff's exemption request without individualized consideration, approved nearly all others, and terminated Plaintiff after fourteen years of service. (Doc. 84 at 4).

The Fifth Circuit has described the relevant standard as follows:

Proving punitive damages presents "a higher standard than the showing necessary for compensatory damages, satisfied in 'only a subset of cases involving intentional discrimination.'" [*E.E.O.C. v. Boh Bros. Const. Co.*, 731 F.3d 444, 467 (5th Cir. 2013)] (quoting *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 534 [] (1999)). Under Title VII, punitive damages are recoverable only if the employer "engaged in a discriminatory practice . . . with malice or with reckless indifference to [an employee's] federally protected rights." 42 U.S.C. § 1981a(b)(1). "The terms 'malice' or

12

'reckless indifference' pertain to the employer's knowledge that it may be acting in violation of federal law, not its awareness that it is engaging in discrimination." *Kolstad*, 527 U.S. at 535 [].

Malice has been described as "evil motive or intent," and reckless indifference has been described as "a 'subjective consciousness' of a risk of injury or illegality and a 'criminal indifference to civil obligations.'" *Id.* at 536 [] (quoting *Smith v. Wade*, 461 U.S. 30, 37 n. 6, 41, 56 [] (1983)). "Pointing to evidence of an employer's egregious behavior would provide one means of satisfying the plaintiff's burden to 'demonstrate' that the employer acted with the requisite 'malice or . . . reckless indifference,'" but "an employer's conduct need not be independently 'egregious' to satisfy § 1981a's requirements for punitive damages award." *Id.* at 539, 546 [] (quoting 42 U.S.C. § 1981a(b)(1)).

*Henry v. CorpCar Servs. Houston, Ltd.*, 625 F. App'x 607, 614 (5th Cir. 2015); *see also Williams v. E.I. du Pont de Nemours & Co.*, 180 F. Supp. 3d 451, 465 (M.D. La. 2016).

"Moreover, [] if particular agents acted with malice or reckless indifference, an employer may avoid vicarious punitive damages liability if it can show that it made good-faith efforts to comply with Title VII." *Harris v. FedEx Corp. Servs., Inc.*, 92 F.4th 286, 302 (5th Cir. 2024), *cert. denied*, 145 S. Ct. 168 (2024) (citing *Boh Bros.*, 731 F.3d at 467). "Given these stringent standards, a plaintiff faces . . . a 'formidable burden' in seeking punitive damages for employment discrimination." *Harris*, 92 F.4th at 302 (citing *Boh Bros.*, 731 F.3d at 467; quoting *Canny v. Dr. Pepper / Seven-Up Bottling Grp., Inc.*, 439 F.3d 894, 903 (8th Cir. 2006)).

The Circuit has further emphasized that, "[u]ltimately, the terms 'malice' and 'reckless indifference' focus on the actor's state of mind." *Harris*, 92 F.4th at 302 (internal quotation marks and citation omitted). "[F]or punitive damages, it is the employer's subjective intent that matters." *Id.*

13

Here, Defendant contends that the record plainly demonstrates that Defendant and Defendant's employees who processed Plaintiff's religious exemption request reasonably believed their conduct in reviewing and denying Plaintiff's request was lawful, pointing to the following facts. (Doc. 78-2 at 29).

Defendant's religious exemption request states the following:

> Honeywell ("Company") is committed to providing equal employment opportunities without regard to any protected status and a work environment that is free of unlawful harassment, discrimination, and retaliation. As such, the Company takes its obligations to provide reasonable accommodation to persons with sincerely held religious beliefs seriously. When requested, the Company will provide an exemption/accommodation for an employee/candidate who adequately articulates a sincerely held religious belief that prohibits the employee/candidate from receiving a COVID-19 vaccine, provided the requested exemption/accommodation is reasonable and does not create an undue hardship for the Company or pose a direct threat to the health and/or safety of others in the workplace and/or to the requesting employee/candidate.

(Doc. 97 ¶ 19). Plaintiff testified that when he was terminated, Defendant told him his reason for termination was "failure to follow [Defendant's] COVID mandates." (*Id.* ¶ 49). Plaintiff testified that no one at Honeywell told him he was being terminated because of his religion. (*Id.* ¶ 50).

Plaintiff responds that punitive damages turn on the credibility of witnesses, the weight of testimony, and the reasonableness of Plaintiff's efforts. (Doc. 84 at 8). Plaintiff contends that under settled law, credibility determinations and the balancing of evidence are the exclusive province of the jury, not the Court at summary judgment. (*Id.*). Plaintiff further asserts that the Circuit has already "held that

14

[Plaintiff] presented sufficient evidence of sincerity to create genuine disputes for trial. If the Fifth Circuit concluded that the record required a jury on sincerity, the same record easily supports jury consideration of [Defendant's] state of mind and whether its conduct was recklessly indifferent." (*Id.* at 10).

In light of the procedural history in this case, the Court must agree with Plaintiff. The Circuit has emphasized that the permissibility of punitive damages is an issue of the "employer's subjective intent," which the Court cannot judge on summary judgment. *See Wantou v. Wal-Mart Stores Texas, L.L.C.*, 23 F.4th 422, 440 (5th Cir. 2022) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) ("Thus, the Court will deny summary judgment on this issue. A reasonable jury could credit [plaintiff's] version of the facts and reject [defendant's] view; the jury, alone, weighs evidence and determines credibility"); *see also Williams*, 180 F. Supp. 3d at 465 ("The Court finds that there are issues of fact as to the availability of punitive damages."). Based on the Circuit's Ruling in this case, the Court finds it appropriate to allow the jury to weigh the evidence at trial on the issue of punitive damages.[2]

For these reasons, Defendant's **Motion for Summary Judgment (Doc. 78)** is **DENIED**.

---

[2] Defendant may, however, move for judgment as a matter of law under Federal Rule of Civil Procedure 50 at the appropriate time during the course of trial.

## V.    CONCLUSION

Accordingly,

**IT IS ORDERED** that Defendant's **Motion For Summary Judgment (Doc. 78)** is **DENIED.**

Baton Rouge, Louisiana, this 29th day of January, 2026

**JUDGE BRIAN A. JACKSON**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

16